UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SYLVIA JENKINS,
                          Plaintiff,

v.                                                    5:10-CV-1223
                                                      (GTS/DEP)

MR. LIADKA, Syracuse Police Officer;
MR. SANDS, Syracuse Police Officer;
JOHN DOE, Syracuse Police Officer;
and SYRACUSE POLICE DEP'T,
                          Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

SYLVIA JENKINS
 Plaintiff, *Pro Se*
250 Hier Avenue
Syracuse, NY 13203

HON. MARY ANNE DOUGHERTY            CATHERINE ENA CARNRIKE, ESQ.
Corporation Counsel for City of Syracuse    Assistant Corporation Counsel
 Counsel for Defendants
233 East Washington Street
Room 301 City Hall
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

### <u>MEMORANDUM-DECISION and ORDER</u>

Currently before the Court, in this *pro se* civil rights action filed by Sylvia Jenkins

("Plaintiff") against Mr. Liadka, Mr. Sands, John Doe, and Syracuse Police Department

("Defendants"), is Defendants' motion to dismiss Plaintiff's Complaint for insufficient service of

process pursuant to Fed. R. Civ. P. 12(b)(5) and/or for failure to state a claim pursuant to Fed. R.

Civ. P. 12(b)(6). (Dkt. No. 13.) For the reasons set forth below, Defendants' motion is granted

in part and denied in part.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Complaint

Generally, construed with the utmost of special liberality, Plaintiff's Complaint asserts

three claims against Defendants arising from an investigatory stop in September 2010, in

Syracuse, New York: (1) a claim that three Syracuse Police Officers unreasonably searched her

in violation of the Fourth Amendment; (2) a claim that they unlawfully seized, and failed to

return, her personal property in violation of the Fourth, Fifth, and/or Fourteenth Amendments;

and (3) a claim that they subjected her to excessive force in violation of the Fourth Amendment.

(*See generally* Dkt. No. 1 [Plf.'s Compl].)

Generally, in support of these claims, Plaintiff alleges as follows: (1) on the evening of

September 9, 2010, she was stopped on Butternut Street in the City of Syracuse by two officers,

who questioned her regarding a call they had received; (2) when she told the two police officers

that she did not know what they were talking about and "attempted to go on about [her]

business," the officers became "uptight, rude, [and] abnormal in their conversations [and]

behavior," and threatened her; (3) the officers then proceeded to conduct a search of "all [of

Plaintiff and her] personal property," and, in the process of doing so, twisted her arm and forced

her onto the front of their police vehicle; (4) a third police officer arrived, and she was assaulted

by all three officers (hereinafter "Defendants"), who hit her on the back and threw her onto the

police vehicle; (5) following the deprivation on September 9, 2010, Defendants denied her a

post-deprivation remedy through a combination of threats, intimidation and/or non-

responsiveness; and (6) Defendants took these actions against her intentionally because they did

not personally like her, given her previous interactions with the Syracuse Police Department.

(*Id.*)

Plaintiff further alleges that, as a result of this incident, she suffered various injuries and losses, including (1) a "tremendous setback in already trying to recover in an [sic] grave overall manner of my life [and] lifestyle involving officials internally [and] externally," (2) head and back pain, and mental suffering, (3) loss of personal property, and, (4) loss of employment. (*Id*.) As relief, Plaintiff requests an award of twelve thousand dollars ($12,000) in damages.  (*Id*. at ¶ 6.)

Familiarity with the remaining factual allegations supporting Plaintiff's three claims is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*See generally* Dkt. No. 1.)

### B.    Defendants' Motion

On May 6, 2011, Defendants filed a motion to dismiss. (Dkt. No. 13, Attach 2.) Generally, in support of their motion, Defendants assert the following two arguments: (1) because the Complaint was not served within the time allowed by Fed. R. Civ. P. 4 or Local Rule 4.1 of the Local Rules of Practice for this Court, the Court lacks jurisdiction over Defendants in accordance with Fed. R. Civ. P. 4; and (2) the Complaint fails to state a claim upon which relief can be granted, because (a) the Complaint fails to identify what constitutional rights Plaintiff is attempting to vindicate, (b) even if the Complaint has sufficiently identified a constitutional violation, the Complaint fails to allege facts plausibly suggesting the personal involvement of the individual Defendants in any such constitutional violation, (c) the City of Syracuse Police Department does not have the legal capacity to be sued, (d) even if Plaintiff's Complaint can be liberally construed as attempting to assert a claim against the City of Syracuse, the Complaint fails to allege facts plausibly suggesting that the individual Defendants' actions the result of a city policy or custom sufficient to confer municipal liability upon the City, (e) the Fifth

Amendment does not govern a plaintiff's deprivation-of-property claim against state actors, (f)

the Complaint fails to allege facts plausibly suggesting that force was used or that if force was

used it was excessive for purposes of a Fourth Amendment claim, and (g) based on Plaintiff's

factual allegations, Defendants Liadka and Sands are protected from liability as a matter of law

by the doctrine of qualified immunity.  (*See generally* Dkt. No. 13, Attach. 2.)

      On June 2, 2011, Plaintiff filed a response to Defendants' motion.  Generally, Plaintiff's

response, which is handwritten and three pages in length, states that she "definitely oppose[s]

[Defendants'] request" for the dismissal of her Complaint.  (*See generally* Dkt. No. 17.)

However, Plaintiff's response does not address the legal arguments asserted by Defendants for

the dismissal of Plaintiff's Complaint.  (*Compare* Dkt. No. 17 *with* Dkt. No. 13, Attach. 2.)

Although Plaintiff's response was submitted two days after the expiration of the response-

deadline, the Court has accepted it, out of an extension of special solicitude to her as a *pro se*

civil rights litigant.

      In addition, Plaintiff has filed three letters to the Court on the following dates: July 6,

2011, August 22, 2011, and January 13, 2012.  (Dkt. No. 18-20.)  Generally, these letters contain

assertions that Plaintiff believes that the police are following her, treating her negatively, and

responding unsatisfactorily to her telephone calls.  (*Id.*)  To the extent that these three letters are

intended to constitute papers in opposition to Defendants' motion, the Court will not consider

them, because (1) they are not responsive to the motion, and/or (2) they were not submitted in a

timely manner.  Moreover, to the extent that these three letters are intended to constitute a

request for relief, the Court will not consider them, because do not state the relief sought, state

with particularity the grounds for seeking the order, and attach a memorandum of law and

affidavit, as required by Fed. R. Civ. P. 7(b) and Local Rule 7.1 of the Local Rules of Practice

for this Court.

II.     **RELEVANT LEGAL STANDARDS**

A.     **Legal Standard Governing Motions to Dismiss for Insufficient Service of Process**

Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court–on motion or its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

The Local Rules of Practice for this Court shorten the service requirements under Fed. R. Civ. P. 4. Specifically, Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint.  This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice.  In no event shall service of process be completed after the time specified in Fed. R. Civ. P. 4." N.D.N.Y. L.R. 4.1(b).

B.     **Legal Standard Governing Motions to Dismiss for Failure to State Claim**

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is

often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.[1]

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks

---

[1]       It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [emphasis added].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added].  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.  *See Rusyniak,* 629 F. Supp.2d at 214 & n.35 (explaining holding in *Erickson*).

and citations omitted].  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949  (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

This pleading standard applies even to *pro se* litigants.  While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[3]  Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp. 2d at 214, n.28.

Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.

---

[2]        *See Vega v. Artus,* 610 F. Supp.2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases).

[3]        *See Vega,* 610 F. Supp.2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases).

8

R. Civ. P. 12(b)(6).  The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.*, 12-CV-0336, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (Suddaby, J.).  Moreover, "a pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of [her] complaint–to the extent those papers are consistent with the allegations in the complaint." *Planck*, 2012 WL 1977972, at *5.

### C.     Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n. 1 (N.D.N.Y. Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### D.     Legal Standards Governing Plaintiff's Claims

Because the Court has, in its Decision and Order of March 7, 2011, addressed the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not again recite, in their entirety, those legal standards in this Decision and Order,

which is intended primarily for review by the parties.  (*See generally* Dkt. No. 5 [Decision and Order].)

### E.    Legal Standards Governing Defendants' Defenses

#### 1.    Defense of Lack of Separate Identity

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). "Pursuant to Fed. R. Civ. P. 17, New York governs the capacity of a police department to sue or be sued.  In New York, police departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town." *Loria v. Irondequoit* 775 F. Supp. 599, 606 (W.D.N.Y. 1990). While a municipality can sue or be sued, the police department, which does not exist separate from that municipality, can not.  *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999).

#### 2.    Defense of Limited Municipal Liability

It is well established that "[a] municipality may not be held liable in a Section 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior*."[4] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's  employees, a plaintiff must show that the violation of [his or] her constitutional

---

[4]    *Powell v. Bucci*, 04-CV-1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov. 30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior*.").

rights resulted from a municipal custom or policy."[5]  "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to . . . prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."[6]

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality . . . ; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question . . . ; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials . . . ; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees. . . ."[7]

_____

[5]     *Powell*, 2005 WL 3244193, at *5; *Monell*, 436 U.S. at 690-691 ("[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista*, 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York*, 290 F. Supp.2d 317, 321 (S.D.N.Y. 2003) ("In order to establish the liability of [municipal] defendants in an action under § 1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[6]     *Batista*, 702 F.2d at 397, *accord*, *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995), *McKeon v. Daley*, 101 F. Supp.2d 79, 92 (N.D.N.Y. 2000) (Hurd, J.), *Merriman v. Town of Colonie, NY*, 934 F. Supp. 501, 508 (N.D.N.Y. 1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins*, 90-CV-0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. Cnty. of Albany*, 594 F. Supp. 1147, 1156 (N.D.N.Y. 1984) (Miner, J.).

[7]     *Dorsett-Felicelli, Inc.*, 371 F. Supp.2d 183, 194 (N.D.N.Y. 2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord*, *Dunbar v. Cnty. of Saratoga*, 358 F. Supp. 2d 115, 133-134 (N.D.N.Y. 2005) (Munson, J.); *see also Clayton v. City of Kingston*, 44 F. Supp.2d 177, 183 (N.D.N.Y. 1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation).[8]

### 3.        Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) [citations omitted], *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) [citations omitted].

---

[8]        *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, n.8 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation.  There must be at least an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.  Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] . . . we must reverse the judgment below."); *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that . . . an official policy or custom [was] the cause of the deprivation of constitutional rights. . . . [T]he plaintiff must establish a causal connection–an affirmative link–between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City."); *Powell*, 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) [citations omitted], *cert. denied*, 503 U.S. 962 (1992).[9]  "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful."  *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) [citations omitted].[10]  This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]."

---

[9]     *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

[10]     *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).[11]  As the Supreme Court has explained,

> [T]he qualified immunity defense . . . provides ample protection to all but
> the plainly incompetent or those who knowingly violate the law.
> . . . Defendants will not be immune if, on an objective basis, it is obvious
> that no reasonably competent officer would have concluded that a warrant
> should issue; but if officers of reasonable competence could disagree on
> this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.[12]

## III.  ANALYSIS

### A.  Whether Plaintiff's Complaint Should Be Dismissed for Failure to Serve Process in Timely Manner

After carefully considering the matter, the Court must answer this question in the

negative.  By Defendants' own calculations, Plaintiff's Complaint was served on April 18,

2011–a mere 42 days after the Court granted Plaintiff's motion to proceed *in forma pauperis*,

approved the filing of her Complaint, and directed the Clerk of the Court to issue summonses

and forward them with the Complaint to the United States Marshal's Service, for service on

Defendants.  (Dkt. No. 5 [Decision and Order filed March 7, 2011].)  Indeed, Defendants

acknowledge that Plaintiff completed the Civil Summonses and USM285 form, and returned

them to the Clerk's Office (so that the Clerk's Office could forward them to the U.S. Marshal's

Service for service of Plaintiff's Complaint) less than eight days after receiving them from the

Clerk's Office.  (Dkt. No. 13, Attach. 1, at ¶¶ 6-7; Dkt. No. 13, Attach. 2, at 9 [attaching page

"8" of Defs.' Memo. of Law]; *see also* Dkt. Nos. 6, 8.)  After that point in time, service was

largely if not entirely outside of Plaintiff's control.

---

[11]     *See also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) [citing cases]; *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

[12]     *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

Under the circumstances, the Court finds that good cause exists to extend the deadline for service by 42 days. The Court notes that a contrary conclusion (e.g., a conclusion that Plaintiff had to serve her Complaint by December 13, 2010 pursuant to Local Rule 4.1, or even February 11, 2011 pursuant to Fed. R. Civ. P. 4) would render meaningless the Court's directive to the Clerk of the Court, on March 5, 2011, to take sufficient action to enable the United States Marshal's Service to effect service for Plaintiff.

**B.      Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted**

**1.      Whether Plaintiff's Complaint Should Be Dismissed for Failing to Sufficiently Identify What Constitutional Rights She Is Attempting to Vindicate**

After carefully considering the matter, the Court must answer this question also in the negative. In construing the pleadings of a *pro se* civil rights litigant in this Circuit, a district court's imagination should be limited only by the plaintiff's factual allegations, not by the legal claims set out in his or her pleadings. *See Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings. ").

Here, based on Plaintiff's (albeit scant and confused) factual allegations, the Court can imagine that she is attempting to assert the following three claims: (1) a claim of an unreasonable search under the Fourth Amendment; (2) a claim of an unlawful seizure of, and failure to return, her personal property under the Fourth, Fifth and/or Fourteenth Amendments; and (3) a claim of excessive force under the Fourth Amendment.

15

> ### 2. Whether Plaintiff's Claims Against the Individual Defendants Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Their Personal Involvement in the Constitutional Violations Alleged

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 13, Attach. 2, at 13 [attaching page "12" of Defs.' Memo. of Law].)  The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal.  *See, supra,* Part III.C. of this Decision and Order.[13]  Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument.  Third, and finally, even when construed with the utmost of special liberality, the Complaint does not identify the precise location of the incident, which officers were responsible for violating her rights, how she suffered the head injury she alleges, what property was taken from her, and how Defendants frustrated her efforts to recover that property.  *See Vogeler v. Colbath*, 04-CV-6071, 2005 U.S. Dist. LEXIS 44658, at *29 (S.D.N.Y. Oct. 6, 2005) ("Plaintiffs must also allege . . . the personal involvement of the Defendant in the actions underlying their claim." ).[14]

---

[13]     Under the circumstances, the Court finds that Plaintiff had sufficient notice of the consequences of failing to respond to the arguments asserted in Defendants' motion.  For example, on October 14, 2010, Plaintiff was given a courtesy copy of the District's *Pro Se* Handbook and a courtesy copy of the Local Rules of Practice for the Northern District of New York.  (Dkt. No. 4.)  In addition, on May 6, 2011, Defendants advised Plaintiff of her need to respond to their arguments.  (Dkt. No. 15.)  Also, Plaintiff had extensive experience as a *pro se* civil rights litigant in this District, before responding to the motion in question.  *See, infra,* Part III.D. of this Decision and Order.

[14]     Indeed, the Court notes that one of the officers that Plaintiff lists in her Complaint has not been identified.  In a prior decision by the Court, Plaintiff was ordered to take reasonable steps to ascertain the identity of the unnamed officer, immediately notify the Court, amend her

For all of these alternative reasons, Plaintiff's claims against the individual Defendants are dismissed.

### 3.	Whether the Syracuse Police Department Should Be Dismissed as a Defendant

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 13, Attach 2, at 13.)  The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal.  Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument.  Third, and finally, "as Plaintiff has been told several times, under New York State law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued."  *Jenkins v. Onondaga Cnty. Sheriff's Dep't*, 12-CV-0855, Report-Recommendation, at 5 (N.D.N.Y. filed June 28, 2012) (Baxter, J.) (citing *Hayes v. Cnty. of Sullivan*, 07-CV-0667, 2012 WL 1129373, at *24 [S.D.N.Y. March 30, 2012]).  Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case.  The real party in interest is the City of Syracuse itself.

For all of these alternative reasons, the Syracuse Police Department dismissed as a Defendant.

---

complaint to include the identity of the third Defendant, and also to have that officer served. (Dkt. No. 5, at 14.)  Because Plaintiff has not done so, her alleged physical injuries remain attributable to an unidentified person.

> **4.      Whether, Even if the City of Syracuse Were Substituted for the Police
> Department, Plaintiff's Claims Against the City Should Be Dismissed
> for Failing to Allege Facts Plausibly Suggesting Municipal Liability**

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 13, Attach. 2, at

14-15 [attaching pages "13" and "14" of Defs.' Memo. of Law].)  The Court would add only the

following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by

Plaintiff's failure to respond to this argument for dismissal.  Second, in any event, the Court

would reach same conclusion even if it were to subject Defendants' argument to the more

rigorous scrutiny appropriate for a contested argument.  Third, even when it is construed with the

utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a

widespread policy or custom promulgated by the municipal policy maker necessary to hold the

City liable for her injuries.  As indicated above in Part II.E.2. of this Decision and Order,

Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or

'policy' which is the 'moving force' behind [the violation]."  *Zappala v. Albicelli*, 980 F. Supp

635, 639 (N.D.N.Y. 1997) (Scullin, J.) (citing, *inter alia*, *Monell v. Dept of Soc. Servs. of City of

New York*, 436 U.S. 658, 689 [1978]).  However, Plaintiff has not alleged *any* official policy or

custom adopted by the City of Syracuse or its Police Department,[15] let alone one responsible for

the alleged injuries she received.  Because *Monell* prohibits the finding of liability against a City

---

[15]      In addition to not alleging facts plausibly suggesting the existence of a
department-wide policy or custom, Plaintiff has not alleged facts plausibly suggesting that
Officers Liadka, Sands, and the unnamed officer created or promulgated that policy, or even that
they were final policymakers.  "A municipal official that exercises discretion, whether it be in a
constitutional or unconstitutional manner, in an area of which that official is not the final
policymaker, cannot, by itself, establish municipal liability."  *Clayton v. City of Kingston*, 44 F.
Supp. 2d 177, 184 (N.D.N.Y. 1999) (McAvoy, C.J.).

when there is no causal connection between a municipal policy and a resulting injury, Syracuse

City Police Department cannot be responsible for Plaintiff's alleged injuries.  *Monell*, 436 U.S.

at 692.  As a result, the City of Syracuse cannot be maintained as a Defendant in this action, and

Plaintiff's Section 1983 claims against it are dismissed.

      For all of these reasons, Plaintiff's claims against the City of Syracuse Police Department

and/or the City of Syracuse are dismissed on this alternative ground.

> **5.    Whether, in the Alternative, Plaintiff's Deprivation-of-Property
> Claim Should Be Dismissed to the Extent It Is Grounded on the Fifth
> Amendment**

      After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 13, Attach. 2, at

16-17  [attaching pages "15" and "16" of Defs.' Memo. of Law].)  The Court would add only the

following four brief points.

      First, at the very least, Defendants have met the lightened burden that was created by

Plaintiff's failure to respond to this argument for dismissal.  Second, in any event, the Court

would reach the same conclusion even if it were to subject Defendants' argument to the more

rigorous scrutiny appropriate for a contested argument.  Third, a takings claim is not ripe where a

state remedy is potentially available.  *Vandor Inc. v. Militello*, 301 F.3d 37, 39 (2d. Cir. 2002).

As the Supreme Court has explained,

> An unauthorized intentional deprivation of property by a state employee
> does not constitute a violation of the procedural requirements of the Due
> Process Clause of the Fourteenth Amendment if a meaningful
> postdeprivation remedy for the loss is available.  For intentional, as for
> negligent deprivations of property by state employees, the state's action is
> not complete until and unless it provides or refuses to provide a suitable
> postdeprivation remedy.

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Police are not required to provide the owner with

notice for state-law remedies, which are "established by published, generally available state statutes and case law." *City of W. Covina v. Perkins,* 525 U.S. 234, 240-241 (1999).  "Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures that are available to him.  The City need not take other steps to inform him of his options." *City of W. Covina,* 525 U.S. at 241.  Here, Plaintiff has not alleged facts plausibly suggesting that she attempted to recover her property in the proper manner (or even what property was taken).  Fourth, and finally, Plaintiff does not allege facts suggesting that her property was taken for public use in an unconstitutional manner that would require her to be paid just compensation. Instead, Plaintiff alleges that, after she attempted to escape from their investigation and was restrained by officers, she was searched and had property taken from her.

For all of these alternative reasons, Plaintiff's deprivation-of-property claim is dismissed to the extent that it is grounded on the Fifth Amendment.

> **6.     Whether, in the Alternative, Plaintiff's Excessive Force Claim Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Either that Force Was Used or that Any Such Force Was Excessive**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 13, Attach. 2, at 17-18  [attaching pages "16" and "17" of Defs.' Memo. of Law].)  The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal.  Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument.  Third, as stated in the Court's Decision and Order of March 7, 2011, in evaluating a Fourth Amendment excessive-force claim, "courts

must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  (Dkt. No. 5, at 13.)[16]  Here, Plaintiff alleges the following facts, which could be construed as plausibly suggesting that, at the time the incident occurred, she had given Defendants probable cause to use the force at issue against her: (1) Defendants were dispatched to that location regarding a problem; (2) Defendants specifically chose to question Plaintiff about the incident; (3) Plaintiff was attempting to get away from Defendant when they were attempting to question her; (4) she acted in such a way as to cause Defendants to become "worked up"; (5) it became necessary for a third unnamed officer to step in and assist Defendants Sands and Liadka in controlling Plaintiff.  (Dkt. No. 1, at ¶ 4 & Attachment.)  Simply stated, it is plausible, based on Plaintiff's factual allegations, that the amount of force used by the officers to pull her hands behind her back and detain her was necessary to keep her from getting away and "going about [her] business."  (*Id*. at ¶ 4.)  It is important to note that Plaintiff does not allege facts plausibly suggesting any physical injury other than vague "head & back pains."  (*Id*. at ¶ 5.)[17]

---

[16]    More specifically, the standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 388, 391 (1989).  Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted."  *Graham,* 490 U.S. at 390, 397.  It is essential to look at surrounding circumstances in each case, and analyze "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* at 396.  The "extent of intrusion on the suspect's rights" must be balanced against the "importance of governmental interests."  *Tennessee v. Garner,* 471 U.S. 1, 8 (1985).

[17]    More specifically, Plaintiff's Complaint does not allege facts plausibly suggesting that her injuries were significant, how long the pain lasted, or that medical treatment was necessary (or even sought) following the incident.  *See Smith v. City of New York*, 04-CV-3286, 2010 U.S. Dist. LEXIS 88774, at *27 (S.D.N.Y. Aug. 27, 2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity.") (collecting cases).

For all of these reasons, Plaintiff's excessive force claim is dismissed on this alternative ground.

> **7.      Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law.  (Dkt. No. 13, Attach. 2, at 19-20  [attaching pages "18" and "19" of Defs.' Memo. of Law].)  The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal.  Second, in any event, the Court would the reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument.  Third, as indicated above in Part I.E.3. of this Decision and Order, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act."  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (internal quotations and other citations omitted).  Here, based on Plaintiff's own factual allegations, it is plausible that police officers of reasonable competence could disagree as to whether Defendants' actions were unlawful (e.g., given their need to question her, and her attempt to flee the scene).

For all of these reasons, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

**C.     Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action**

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile.  As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted), *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs.  *See, e.g., Cuoco*, 222 F.3d at 103; *Brown*, 1997 WL 599355, at *1.  As explained above in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules

governing the form of pleadings (as the Second Circuit has observed), it does not completely

relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P.

8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized,

the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se*

civil rights plaintiffs must follow.

Here, the Court has some difficulty finding that the referenced defect in Plaintiff's

Complaint is merely formal.  Nor is the Court confident that granting Plaintiff an opportunity to

amend her Complaint will be productive.  The Court notes that the errors made by Plaintiff in

this action were previously made by her, and not corrected, on many occasions.  Plaintiff has

been ordered numerous times to file amended complaints at risk of dismissal of her case.[18]  Of

the seven times an amended complaint was required, Plaintiff submitted an amended complaint

only three times.[19]  Two of these were one page documents which did not state a claim upon

which relief could be granted and were rejected by the Court, and the other did not correct the

deficiencies of the original complaint.[20]  Plaintiff did not comply with the Court's order to amend

---

[18]     *Jenkins v. Comm'r of Soc. Sec. Admin.*, 06-CV-0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.*, 06-CV-0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Dep't Corr. Servs.*, 06-CV-0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Onondaga Sheriff's Dep't.*, 06-CV-1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't.*, 07-CV-0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy*, 08-CV-0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.*, 12-CV-0855 (N.D.N.Y. filed May 23, 2012).

[19]     *Jenkins v. Dep't Corr. Servs.*, 06-CV-0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Comm'r of Soc. Sec. Admin.*, 06-CV-0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Sheriff's Dep't.*, 07-CV-0939 (N.D.N.Y. filed Sept. 11, 2007).

[20]     *Id.*

her complaint at all on four occasions.[21]  In one case, Plaintiff was given an additional thirty day

period to file her amended complaint after she failed to do so within the first 30 day period

granted to her.  *Jenkins v. Emergency Dep't Upstate Univ. Hosp.*, 06-CV-0060 (N.D.N.Y. filed

Jan. 17, 2006).  Similarly, in a separate case, Plaintiff did not follow up on her original claim

because she failed to appear for three hearings the Court rescheduled despite warnings of her

need to comply with the Court Orders.  *Jenkins v. Onondaga Sheriffs' Dep't*, 05-CV-1457

(N.D.N.Y. filed Nov. 21, 2005).  All seven of these cases resulted in dismissal, most for failure

to prosecute, failure to comply with Court Orders, or failure to state a claim. Five of Plaintiff's

cases were not given leave to amend because granting such leniency would have been futile.[22]

However, the Court is mindful of the special solicitude that should be afforded to *pro se*

civil rights litigants.  For these reasons, before the Court dismisses Plaintiff's action, the Court

will afford her an opportunity to file an Amended Complaint correcting the above-described

pleading defects within thirty (30) days from the date of the filing of this Decision and Order.

If Plaintiff submits an Amended Complaint, she is encouraged to describe the acts of

misconduct alleged therein and identify each individual who participated in the misconduct.

Moreover, Plaintiff is advised that her Amended Complaint must be a complete pleading that

will replace and supersede her original Complaint in its entirety.  Finally, Plaintiff is cautioned

---

[21]     *Jenkins v. Emergency Dep't Upstate Univ. Hosp.*, 06-CV-0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Onondaga Sheriff's Dep't.*, 06-CV-1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Murphy*, 08-CV-0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.*, 12-CV-0855 (N.D.N.Y. filed May 23, 2012)

[22]     *Jenkins v. Emergency Dep't Upstate Univ. Hosp.*, 06-CV-0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Mohawk Corr. Facility*, 06-CV-1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. Sheriff's Dep't*, 07-CV-0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. USA*, 09-CV-0603 (N.D.N.Y. filed May 11, 2009);  *Jenkins v. Rice*, 11-CV-1037 (N.D.N.Y. filed Aug. 31, 2011).

that, if she fails to file, in a timely fashion, an Amended Complaint that successfully states a

claim upon which relief can be granted, her action will be dismissed with prejudice without

further Order of the Court.

> **D.     Whether This Case Should Be Forwarded to the Chief Judge with a Recommendation that an Anti-Filing Injunction Order Be Issued Against Plaintiff**

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court

Electronic Records ("PACER") Service reveals that, before filing the current action on October

13, 2010, she filed thirteen *pro se* civil actions in this District alone–twelve of which have been

dismissed and the thirteen of which is being considered for dismissal.[23]  A review of Plaintiff's

litigation history has caused the undersigned to believe that (1) Plaintiff lacks a good-faith

expectation in prevailing in her lawsuits, (2) she is vexatious and indeed incorrigible when

proceeding pro se, (3) she has caused needless expense to other parties and placed an

unnecessary burden on the Court and its personnel, and (4) no lesser sanctions (e.g., such as

dismissal or chastisement) would be adequate to protect the Court and other parties.

For example, eight of Plaintiff's actions have resulted in a dismissal for failure to state a

claim or frivolousness, another has resulted in the pending recommendation of a dismissal on

---

[23]     *Jenkins v. Onondaga Sheriffs' Dep't*, 05-CV-1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Dep't Corr. Servs.*, 06-CV-0621 (N.D.N.Y. filed May 19, 2006); *Jenkins Comm'r of Soc. Sec. Admin.*, 06-CV-0059 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.*, 06-CV-0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. City of Syracuse*, 06-CV-1005 (N.D.N.Y. filed Aug. 21, 2006); *Jenkins v. Onondaga Sheriff's Dep't*, 06-CV-1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Mohawk Corr. Facility*, 06-CV-1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. City of Syracuse*, 07-CV-0930 (N.D.N.Y. filed Sept. 7, 2007); *Jenkins v. Sheriff's Dep't*, 07-CV-0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy*, 08-CV-0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. USA*, 09-CV-0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice*, 11-CV-1037 (N.D.N.Y. filed Aug. 31, 2011); *Jenkins v. Onondaga Cnty. Sheriff's Dept.*, 12-CV-0855 (N.D.N.Y filed May 23, 2012).

that ground, three others have resulted in a dismissal for lack of subject-matter jurisdiction, and

another has resulted in a dismissal for failure to prosecute.[24]

Moreover, Plaintiff has sued the Onondaga County Sheriff's Department four times.[25]  As

a result, she has been repeatedly instructed on the legal standard for suing a municipality.  For

example, on October 6, 2006, she was specifically informed of the need to establish a custom or

policy which is the moving force behind a resulting injury.  *Jenkins v. Onondaga Cnty. Sheriff's

Dep't.*, 06-CV-1092, Decision and Order, at 4 (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

However, despite receiving that specific information, she has *repeatedly* continued to file

improper claims against the Onondaga County Sheriff's Department.[26]

_____

[24]    *Jenkins v. Onondaga Sheriffs' Dep't*, 05-CV-1457, Decision and Order (N.D.N.Y. filed Apr. 25, 2006) (Scullin, J.); *Jenkins Comm'r of Soc. Sec. Admin.*, 06-CV-0059, Decision and Order (N.D.N.Y. filed March 29, 2007) (Hurd, J.); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.*, 06-CV-0060, Memorandum-Decision and Order (N.D.N.Y. filed April 14, 2006) (Scullin, J.); *Jenkins v. Dep't Corr. Servs.*, 06-CV-0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. City of Syracuse*, 06-CV-1005, Order (N.D.N.Y. filed Oct. 5, 2006) (Mordue, C.J.); *Jenkins v. Onondaga Sheriff's Dep't*, 06-CV-1092, Decision and Order, (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.); *Jenkins v. Mohawk Corr. Facility*, 06-CV-1167, Decision and Order (N.D.N.Y. filed Oct. 12, 2006) (Mordue, C.J.); *Jenkins v. City of Syracuse*, 07-CV-0930, Decision and Order (N.D.N.Y. filed Oct. 7, 2007) (Mordue, C.J.); *Jenkins v. Sheriff's Dep't*, 07-CV-0939, Decision and Order (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Murphy*, 08-CV-0921, Order (N.D.N.Y. filed Oct. 14, 2008) (McCurn, J.); *Jenkins v. USA*, 09-CV-0603, Decision and Order (N.D.N.Y. filed May 28, 2009) (McAvoy, J.); *Jenkins v. Rice*, 11-CV-1037, Decision and Order (N.D.N.Y. filed Oct. 11, 2011) (Kahn, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.*, 12-CV-0855, Report-Recommendation (N.D.N.Y filed June 28, 2012) (Baxter, M.J.).

[25]    *Jenkins v. Onondaga Sheriffs' Dep't*, 05-CV-1457 (N.D.N.Y. filed Nov. 21, 2005);  *Jenkins v. Onondaga Sheriff's Dep't*, 06-CV-1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't*, 07-CV-0939 (N.D.N.Y. filed Sept. 11, 2007);  *Jenkins v. Onondaga Cnty. Sheriff's Dept.*, 12-CV-0855 (N.D.N.Y filed May 23, 2012).

[26]    *Jenkins v. Sheriff's Dep't*, 07-CV-0939, Decision and Order at 3 (N.D.N.Y. filed Oct. 2, 2007) (Hurd, J.); *Jenkins v. Sheriff's Dep't*, 07-CV-0939, Decision and Order at 2 (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.*, 12-CV-0855, Decision and Order, at 4-5 (N.D.N.Y filed May 24, 2012) (Baxter, M.J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.*, 12-CV-0855, Report-Recommendation, at 5-6 (N.D.N.Y filed June 28, 2012) (Baxter, M.J.); *see also, supra,* Part III.B.4. of this Decision and Order.

Finally, Plaintiff has repeatedly had to be ordered to comply with the Local Rules, and reminded that all factual allegations should be contained in the complaint itself, that paragraphs ought to be numbered, and that the individuals she alleges violated her rights must be identified. *See, e.g., Jenkins v. Dep't Corr. Servs.*, 06-CV-0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. Onondaga Sheriff's Dep't*, 06-CV-1092, Order (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.  For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court.  *See Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts  may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) ("[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers*, 08-CV-0330, 2008 WL 1767067, at *1 (N.D.N.Y. Apr. 16, 2008) (McCurn, J.).

For all of these reasons, this case is forwarded to Chief United States District Judge Gary L. Sharpe with a recommendation that an Anti-Filing Injunction Order be issued against Plaintiff.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is conditionally **DISMISSED**; and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within **THIRTY (30) DAYS** of the filing date of this Order; and it is further

**ORDERED** that, if Plaintiff fails to timely file an Amended Complaint, the Clerk shall enter judgment dismissing this action without further Order of this Court; and it is further

**ORDERED** that, upon filing of the Amended Complaint, this file in this matter be returned to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court is directed to forward this case to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an Anti-Filing Injunction Order be issued against Plaintiff.

The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

Dated: September 12, 2012
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

29